**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILLIAM J. O'BRIEN, III,**<br>　　　　　**Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **DEPARTMENT OF JUSTICE,**<br>　　　　　**Defendant.** | **NO.  20-0092** |

<u>**MEMORANDUM OPINION**</u>

Plaintiff William J. O'Brien III and his employee, Angela Rongione, were once co-defendants in a criminal suit.  Rongione testified against O'Brien at trial and in June 2016, he was convicted of causing a death through the illegal distribution of controlled substances.  O'Brien is currently serving a 30-year sentence, but firmly maintains his innocence.  In 2019, O'Brien submitted a request for information to the FBI pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA").  He asked for all FBI records on his case that referenced Rongione prior to January 20, 2015.  The FBI conducted a search for the requested records and eventually released 47 pages in full.  The agency relied on statutory exemptions contained in Section 552(b) of FOIA to withhold 197 pages and redact 113 pages.  O'Brien sued the United States Department of Justice (the "Government"), challenging the FBI's application of FOIA's exemptions.

The Parties filed cross-motions for summary judgment.  To explain its application of each FOIA exemption, the Government submitted two declarations by Michael G. Seidel, the Section Chief of the FBI's Record/Information Dissemination Section.  Its reasoning for redacting or withholding each document was further documented in a *Vaughn* index (the "First Vaughn

Index").[1]  On April 14, 2022, this Court issued an order acknowledging that a district court must have "sufficient factual basis to rule on the applicability of exemptions claimed by the government" and requiring the Parties to file supplemental briefing concerning the Government's justification for withholding in full 33 pages identified in the First Vaughn Index as containing third-party information (ECF No. 57 (citing *McDonnell v. United States*, 4 F.3d 1227 (3d Cir. 1993) and *Davin v. DOJ*, 60 F.3d 1043 (3d Cir. 1995))).  The Government's supplemental brief was accompanied by Seidel's Third Declaration, the Supplemental Vaughn Index, and newly-redacted copies of 30 pages that it had previously withheld in full.

For the reasons that follow, the Government's Motion for Summary Judgment will be granted and O'Brien's Motion for Summary Judgment will be denied.

## I.   LEGAL STANDARDS

To prevail on a summary judgment motion, "the movant must show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Nat'l State Bank v. Fed. Rsrv. Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1992) (quoting Fed. R. Civ. P. 56(c)).  "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings."  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citations omitted).  "[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S.

---

[1] "A *Vaughn* index is an affidavit which supplies an index of withheld [and redacted] documents and details the agency's justification for claiming exemption."  *Patterson ex rel. Patterson v. FBI*, 893 F.2d 595, 599 n.7 (3d Cir. 1990) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)).  Ordinarily, "a *Vaughn* index correlating justifications for non-disclosure with the particular portions of the documents requested will generally suffice to narrow the disputed issues and permit a reasoned disposition by the district court."  *Id.* at 599.

654, 655 (1962) (*per curiam*)).

Congress enacted FOIA "to facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). But public access is not "all encompassing." *Sheet Metal Workers Int'l Ass'n, Loc. Union No. 19 v. U.S. Dep't of Veterans Affs.*, 135 F.3d 891, 897 (3d Cir. 1998) (citation omitted). FOIA exempts nine categories of documents from public disclosure. *Id.*[2] In the application of these exemptions, FOIA "places the burden on the agency to justify the withholding [or redaction] of any requested documents." *Ray*, 502 U.S. at 173; 5 U.S.C. § 552(a)(4)(B).

"The agency may meet this burden by filing affidavits describing the material withheld and detailing why it fits within the claimed exemption." *McDonnell*, 4 F.3d at 1241 (citing *King v. DOJ*, 830 F.2d 210, 217-18 (D.C. Cir. 1987) ("The significance of agency affidavits in a FOIA case cannot be underestimated.")). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *see also Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (summary judgment is appropriate without *in camera* review if this standard is satisfied).[3]

---

[2] At a high level, those nine categories are: (1) matters authorized to be kept secret by an Executive Order; (2) matters "related solely to the internal personnel rules and practices of an agency"; (3) matters "specifically exempted from disclosure by statute"; (4) trade secrets and privileged or confidential commercial or financial information; (5) inter-agency or intra-agency memorandums or letters; (6) personnel, medical, and similar files; (7) records or information compiled for law enforcement purposes; (8) records of an agency responsible for the regulation or supervision of financial institutions; and, (9) geological and geophysical information and data concerning wells. 5 U.S.C. § 552(b).

[3] While district courts may conduct *in camera* review of the documents at issue, this manner of resolving a case "runs counter to the fundamental principles on which our adversary system is based" and should be done "only

Agency declarations enjoy a presumption of good faith. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). That presumption cannot be overcome by "purely speculative claims about the existence and discoverability of other documents." *Id.* (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). "Ultimately, an agency's justification for invoking a FOIA exemption . . . is sufficient if its appears 'logical' or 'plausible.'" *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013) (quoting *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)).

## II.   DISCUSSION

In this case, neither party alleges the existence of any disputed material facts—their disagreements center on the application of FOIA as a matter of law. In withholding and/or redacting certain documents requested by O'Brien, the Government invoked five statutory exemptions: (1) information protected by statute (5 U.S.C. § 552(b)(3)); (2) confidential source information (*Id.* § 552(b)(7)(D)); (3) personal privacy (*Id.* § 552(b)(6), (7)(C)); (4) pending law enforcement proceedings (*Id.* § 552(b)(7)(A)); and, (5) investigative techniques and procedures (*Id.* § 552(b)(7)(E)). Each exemption will be addressed in turn below.

### A.  Exemption (b)(3): Information Protected by Statute

Exemption (b)(3) protects certain information "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Seidel explained that the FBI invoked this exemption pursuant to Federal Rule of Criminal Procedure 6(e), as modified by Congress (pertaining to the secrecy of grand jury matters), and the Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. § 5038 (protecting certain information related to juvenile adjudications). Both statutes qualify for

---

where it is unavoidable." *Senate of P.R. ex rel. Judiciary Comm.*, 823 F.2d 574, 588-89 (D.C. Cir. 1987) (quoting *Crooker v. ATF*, 789 F.2d 64, 67 (D.C. Cir. 1986). Here, the Government's *Vaughn* indexes and declarations provide a sufficient factual basis for the Court's decision, such that *in camera* review was avoidable.

protection under this exemption.  *McDonnell*, 4 F.3d at 1247, 1249.

O'Brien argues that none of the withheld or redacted pages expressly invoked this exemption and that the Government's explanations are "untrue."  O'Brien's first argument is not supported by the record—Seidel provided the Bates numbers of the documents to which this exemption was applied, and the relevant documents are identified in the Government's First Vaughn Index (Nos. 55, 211-268, and 270-291).  Nor can O'Brien overcome the presumption of good faith with speculative claims of untruth.  *See SafeCard Servs.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch*, 692 F.2d at 771).  The Government has carried its burden as to Exemption (b)(3).

### B.  Exemption (b)(7)(D): Confidential Informants

Exemption (b)(7)(D) "exempts from disclosure agency records 'compiled for law enforcement purposes . . . by criminal law enforcement authority in the course of a criminal investigation' if release of those records 'could reasonably be expected to disclose' the identity of, or information provided by, a 'confidential source.'"  *DOJ v. Landano*, 508 U.S. 165, 167 (1993) (quoting 5 U.S.C. § 552(b)(7)(D)).  "Exemption 7(D) requires no balancing of public and private interests."  *Roth ex rel. Bower v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011).  "If the FBI's production of criminal investigative records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished by' such a source, that ends the matter, and the FBI is entitled to withhold the records under Exemption 7(D)."  *Id*. at 1184-85.  "[T]he government bears the burden of establishing that Exemption 7(D) applies."  *Davin*, 60 F.3d at 1061 (citing *Landano*, 508 U.S. at 171).

Seidel's declarations carry the Government's burden.  He explained that the FBI applied Exemption (b)(7)(D) to two different kinds of confidential sources: those who provided

information under express assurances of confidentiality and those who provided information under implied assurances of confidentiality.  The FBI identified which informants fell into the first category by "locat[ing] positive indicators they were official, established FBI informants." For example, Seidel explained that a source is considered to be operating under an express assurance of confidentiality if he or she is described in the records as a "Confidential Human Source" or "CHS," because that designation is a "positive indication these individuals entered into official, confidential relationships with the FBI in which they would have, by standard FBI practice, been provided with express assurances of confidentiality."  Individuals identified by their "source symbol numbers"—numbers assigned "to CHSs who report information to the FBI on a regular basis under express assurances of confidentiality"—fall into the same category, as do those whose official CHS forms are stamped with the words "Protect Identity."[4]  Release of this information, Seidel warned, would endanger CHSs and harm the FBI's ability to "recruit and maintain reliable CHSs."  For example, "[r]epeated release of their numbers, within the context of certain events/in association with certain singular information, could enable criminals and those familiar with these matters to pinpoint who could possibly have been present at certain events or could possibly have known different pieces of information."

As to implied confidentiality, Seidel explained that some individuals provided information to the FBI about investigative targets involved in the distribution of controlled substances only because they believed their cooperation and the information they shared would remain confidential.  The FBI inferred this belief based on three circumstances: (1) the "singularity of the information provided and the likelihood these individuals could be identified"

---

[4] In his Third Declaration, Seidel explained that "it is the standard practice of [the Record/Information Dissemination Section] to treat the caveat of 'Protect Identity' as an indication that an express assurance of confidentiality was provided."

through its release; (2) the "proximity of these sources to the investigative subjects and events they described"; and, (3) the nature of the criminal acts described.  *See Landano*, 508 U.S. at 181 (circumstances such as "the nature of the crime investigated and the witness' relation to it" may support an inference of confidentiality).

As to the consequences of divulging identifying information about such sources, Seidel explained that these individuals are at risk of harm because "they were within the orbit of suspected violent criminals," who, in the FBI's experience, "typically seek to deter informants' cooperation with law enforcement through reprisal," whether reputational, economic, or violent.

O'Brien does not generally challenge the FBI's determination that its sources shared information with an expectation of confidentiality.  He is focused only on Rongione, asserting that she denied being a confidential source at their criminal trial and therefore the Government cannot now protect her information by claiming that she *is* a confidential source.  He also contends that, because Rongione testified at trial, the FBI cannot invoke this exemption to shield her.

O'Brien's arguments rest on an assumption that Rongione is the confidential informant whose information the FBI has not disclosed.  But in invoking Exemption (b)(7)(D), the Government neither confirmed nor denied the identity of any particular confidential source.  This is known as a "*Glomar* response" because the CIA once refused to confirm or deny the existence of records concerning a ship called the *Hughes Glomar Explorer*, on the grounds that to do so would compromise national security or reveal intelligence sources and methods.  *See Phillippi v. CIA*, 655 F.2d 1325 (D.C. Cir. 1981).  "An agency may issue a *Glomar* response when 'to answer the FOIA inquiry would cause harm cognizable under' an applicable statutory exemption."  *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012)

7

(quoting *Wolf*, 473 F.3d at 374).  "The agency must demonstrate that acknowledging the mere existence of responsive records would disclose exempt information."  *Id.*  "In *Glomar* cases, courts may grant summary judgment on the basis of agency affidavits that contain 'reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'"  *Id.* (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).

The FBI's refusal to confirm or deny the identity of its confidential sources is appropriate because this information is explicitly shielded from disclosure by FOIA, 5 U.S.C. § 552(b)(7)(D), and Seidel's declarations adequately explained both how the agency determined whether an individual qualified as a confidential source and the harm that would result if the FBI did not use a *Glomar* response.

## C.  Exemptions (b)(6) and (b)(7)(C): Privacy

Exemption (b)(6) protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).[5]  Exemption (b)(7)(C) protects law enforcement records to the extent that their production "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  *Id.* § 552(b)(7)(C).  Although Exemption (b)(7)(C) is "somewhat broader" than Exemption (b)(6) in some respects, *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989), both statutes balance the individual privacy interest against the public interest in disclosure.  *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

### i.    *The Privacy Interests*

---

[5] "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citing *U.S. Dep't of State v. Washington Post Co.,* 456 U.S. 595, 602 (1982)).

FOIA recognizes an individual's privacy interest in avoiding disclosure of personal matters and in "making certain kinds of important decisions." *Reps. Comm.*, 489 U.S. at 762. "[T]hird parties, witnesses, and informants mentioned in investigatory files maintain a privacy interest in keeping secret the fact that they were subjects of a law enforcement investigation." *Bartko v. DOJ*, 898 F.3d 51, 71 (D.C. Cir. 2018) (cleaned up) (quoting *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995)). "For that reason, the FBI is permitted 'to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Id.* (quoting *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003)). "That privacy protection also extends to law-enforcement personnel who do not forgo altogether any privacy claim in matters related to official business." *Id.* (cleaned up) (quoting *Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980)).

Seidel explained that the FBI invoked Exemption (b)(6) and (b)(7)(C) to protect the privacy interests of nine different subcategories: (1) FBI agents and staff; (2) third parties who provided information to the FBI; (3) third parties mentioned tangentially; (4) personnel from other federal agencies; (5) local law enforcement; (6) third-party victims; (7) rap sheets; (8) third parties of investigative interest to the FBI; and, (9) commercial institution personnel. The First Vaughn Index and the Supplemental Vaughn Index identify which subcategory the FBI considers to be protected by the application of these exemptions to a given document. Seidel's declarations explain the balancing performed by the FBI in deciding when to assert these privacy exemptions as to each subcategory, including measures taken by the agency to determine whether an individual was still living, whether the FBI employees at issue were "high-level decision makers" (whose information would be released) or "lower echelon employees" (whose

privacy is protected), and the harm likely to result from disclosure of each subcategory of information.

Seidel further explained that, despite the FBI's general policy of issuing *Glomar* responses to requests for information about third parties (absent a privacy waiver, proof of death, or a significant public interest), the agency determined that a *Glomar* response as to Rongione would not be appropriate under Exemptions (b)(6) and (b)(7)(C) because "Plaintiff's request implicated a criminal case file in which Rongione was publicly and officially acknowledged as a co-defendant." Therefore, the FBI acknowledged the existence of responsive records for Rongione. Nevertheless, the FBI took the view that "Rongione's diminished privacy did not completely negate Rongione's privacy interest in specific non-public details about herself contained within FBI records." It therefore applied Exemptions (b)(6) and (b)(7)(C) to withhold non-public details within records concerning Rongione.

O'Brien only challenges the FBI's assertion of privacy interests with respect to Rongione, arguing that, because she testified at his criminal trial, she has no legitimate privacy interest in her FBI records. O'Brien's argument goes too far. An individual may hold a cognizable privacy interest even in information previously disclosed to the public. *Reps. Comm.*, 489 U.S. at 762-63 (rejecting the "cramped notion of personal privacy" that would characterize an individual's privacy interest in his rap sheet as "zero" just because it was previously disclosed to the public). "[T]he fact that 'an event is not wholly "private" does not mean that an individual has no interest in limiting disclosure or dissemination of the information.'" *Id*. at 770 (citation omitted).

For example, a politician who made public statements about his cooperation with a DOJ investigation was found to have lessened his privacy interests in the fact that he was under

investigation, but retained his privacy interest in the contents of the investigative files.  *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1092 (D.C. Cir. 2014).  And two Circuit Courts have specifically held that an individual does not lose all of his or her privacy rights in federal administrative records upon testifying in court.  *See Jones v. FBI*, 41 F.3d 238, 246-47 (6th Cir. 1994) (individuals who testified at requester's *habeas* hearing did not thereby waive their privacy rights under FOIA); *Irons v. FBI*, 880 F.2d 1446, 1456 (1st Cir. 1989) (*en banc*) (public testimony by confidential sources does *not* waive the FBI's right to withhold information covered by Exemption (b)(7)(D) "beyond what has been actually disclosed in the source's prior public testimony").[6]

Under these precedents, Rongione has a privacy interest in the non-disclosure of records containing non-public details about her.

## ii.    The Public Interest

Exemptions (b)(6) and (b)(7)(C) protect records from disclosure only if the invasion of privacy is "unwarranted."  5 U.S.C. §§ 552(b)(6), (b)(7)(C).  "[W]hether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made" or on the "identity of the requesting party."  *Reps. Comm.*, 489 U.S. at 771 (emphasis in original).  Rather, whether disclosure is "warranted" "must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action

---

[6] Plaintiff argues that the Supreme Court's decision in *Landano* obligated the FBI to release Rongione's records once she testified at trial.  On the contrary, *Landano* declined to reach this question.  *Landano*, 508 U.S. at 173-74.  It held that, under Exemption (b)(7)(D), "[a] source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes," rejecting a "total secrecy" standard suggested by the plaintiff.  *Id*. at 174.  Applying this reasoning to Exemptions (b)(6) and (b)(7)(C) would suggest, consistent with the other precedents discussed above, that even if the secrecy of an individual's involvement with the FBI has been disclosed to the public to some extent, she would retain a privacy interest in government records pertaining to her.

to the light of public scrutiny." *Id.* at 772 (internal quotation marks omitted) (citation omitted).

"Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose." *Id.* at 773.  On the other hand, the "disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct" does not serve FOIA's purpose. *Id.* "FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *Id.* at 774 (emphasis in original).  The plaintiff bears the burden of showing (1) that "the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake"; and, (2) that the information sought "is likely to advance that interest." *Nat'l Archives & Recs. Admin. v. Favish,* 541 U.S. 157, 172 (2004).

O'Brien argues an invasion of Rongione's privacy is warranted because the public has a cognizable interest in exposing alleged *Brady* violations that occurred in the course of his criminal prosecution,[7] and in proving his innocence.

    a.   Public Interest in Exposing Government Misconduct at Trial

The Third Circuit has held that uncovering *Brady* violations is a cognizable public

---

[7] O'Brien also maintains that, at trial, the Government violated his rights under *Giglio v. United States*, 405 U.S. 150 (1972) and under "Jencks."  "*Brady* held that the government must turn over exculpatory evidence to defendants, and *Giglio* held that impeachment evidence falls within the rule expressed in *Brady.*" *United States v. Wecht*, 484 F.3d 194, 207 n.15 (3d Cir. 2007) (citations omitted).  Insofar as O'Brien's claims relate to alleged violations of *Brady* or *Giglio*, they will be analyzed together.  The Jencks Act, 18 U.S.C. § 3500, "came into being to 'qualify the loose interpretations the lower federal courts' had given" *Jencks v. United States*, 353 U.S. 657 (1957). *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978).  O'Brien's reference to "Jencks" will therefore be construed as applying to the Act, not to the prior Supreme Court decision.  The Act provides in relevant part: "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."  18 U.S.C. § 3500(b).

interest under FOIA.  *See Ferri v. Bell*, 645 F.2d 1213, 1218 (3d Cir. 1981) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)), *modified on other grounds by* 671 F.2d 769 (3d Cir. 1982), *abrogated on other grounds by Reps. Comm.*, 489 U.S. at 780.  But more is needed to show that this interest warrants an invasion of demonstrated privacy interests.

In the context of FOIA, government records and official conduct enjoy a "presumption of legitimacy." *Ray*, 502 U.S. at 179.  The Supreme Court held that, "where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion" to displace this presumption and obtain disclosure of government records. *Favish*, 541 U.S. at 174.  "Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id*.  "Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id*. at 174-75. "Allegations of government misconduct are 'easy to allege and hard to disprove,' so courts must insist on a meaningful evidentiary showing." *Id.* at 175 (citation omitted).

The *Brady* rule holds that "a criminal defendant may seek a new trial if the prosecution fails to inform him of information creating a reasonable doubt as to his guilt that might not otherwise arise." *Ferri*, 645 F.2d at 1218.  To show that the Government committed a *Brady* violation, a plaintiff must show: "(1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense." *United States v. Claxton*, 766 F.3d 280, 303 (3d Cir. 2014) (citation omitted).  O'Brien has not "produce[d] evidence that would warrant a belief by a reasonable person," *Favish*, 541 U.S. at 174, that the prosecution committed a

13

violation under *Brady* because he has not made a showing of materiality.[8]

O'Brien alleges that "[t]here is no doubt [Rongione] lied at trial, and the information requested here, proves those lies."  Specifically, he contends that Rongione lied by testifying that she was not a confidential informant and had had no contact with Health Care Fraud Task Force agents prior to O'Brien's indictment.  The only specific testimony cited by O'Brien is that, when asked, "Are you the source that they are trying to protect?" Rongione replied, "I don't know what you mean."  This reply cannot reasonably be interpreted as an affirmation that she was not a confidential informant.  O'Brien also argues that "interviews of Rongione, prior to the indictment" should have been disclosed, but he has not explained how those alleged interviews would have been material to the outcome in his criminal case.  His other arguments are similarly conclusory.[9]

---

[8] O'Brien does not develop these allegations fully, instead directing the Court to his habeas corpus petition under 28 U.S.C. § 2255, which was filed in his criminal case, "due to the number of pages involved, and the fact that the [Bureau of Prisons] took all of O'Brien's paperwork for his appeal."  Although pro se plaintiffs are given considerable leeway, they still have to plead their case.  O'Brien's habeas corpus petition, filed in a completely separate case, cannot be considered because it is not part of the summary judgment record here.

[9] For example, O'Brien argues that "[t]he trial would have been different, and may never have happened, if the government followed the rules of discovery and did not commit multiple Brady, Jencks, and Giglio violations;" that "this information will exonerate him and show the prosecutor repeatedly lied at trial, suborned perjury, and 'knowingly and purposefully' withheld exculpatory discovery from O'Brien"; that "information known to the prosecution, that should have been disclosed at trial, would have undercut or negated any of the facts upon which Plaintiff was indicted by the Grand Jury, or convicted at trial"; and that "the information the government is now withholding clearly is beneficial to O'Brien, proves Rongione was a 'Confidential Source', that Rongione perjured herself repeatedly at trial, that the prosecutor suborned perjury, lied to achieve the indictment, and committed several acts of Prosecutorial Misconduct."

O'Brien has already attempted to prove these allegations in a collateral attack on his conviction, without success.  After sentencing, he filed a habeas motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence before the district court, alleging, among other things, violations of *Brady*, *Jencks*, and *Giglio*.  *United States v. O'Brien*, No. 15-cr-21 (filed Jan. 20, 2015), ECF No. 866.  The district court adopted the magistrate judge's report and recommendation denying the motion as "without merit," *id.* ECF No. 882, and the Third Circuit affirmed on appeal. *Id.* ECF No. 897.  Although neither Party explicitly raised the doctrine of collateral estoppel, the Government argued that "FOIA is not intended as a mechanism to challenge a criminal conviction" and that "O'Brien has fully exhausted every challenge to his criminal conviction – both on direct and collateral appeal.  At no time has he prevailed on arguments that the government withheld evidence or violated his rights under *Giglio*, *Brady*, or *Jencks*."  Whether collateral estoppel applies will not be decided here because it has not been fully briefed by the Parties, but the courts' rejection of O'Brien's habeas corpus petition does not weigh in favor of a reasonable belief

Nor has O'Brien "produce[d] evidence that would warrant a belief by a reasonable person" that the prosecution violated the Jencks Act.  The Government's disclosure obligations under the Act accrue only upon motion of the defendant, 18 U.S.C. § 3500(b); *United States v. Heilman*, 377 F. App'x 157, 195-96 (3d Cir. 2010), and the record does not reflect that O'Brien brought such a motion.

### b. <u>Public Interest in Proving Innocence</u>

Although the D.C. Circuit has recognized a public interest in proving a defendant's innocence (in the context of in an individual facing capital punishment), *Roth*, 642 F.3d at 1176-77, several other Circuit Courts have declined to do so.[10]  As to the Third Circuit, when it held in *Ferri v. Bell* that uncovering *Brady* violations constitutes a public interest under FOIA, it also held that there is a cognizable public interest in overturning a federal conviction.  645 F.2d at 1218.  Perceiving no sound basis on which to distinguish an interest in overturning a conviction from an interest in proving an individual's innocence, it will be assumed that the Third Circuit would follow the D.C. Circuit and recognize innocence as a cognizable public interest under FOIA.

But the Supreme Court's instruction that the requester must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred" continues to apply.  *Favish*, 541 U.S. at 174.  "Only when the FOIA requester

---

that government misconduct occurred.

[10] *See, e.g.*, *Carpenter v. DOJ*, 470 F.3d 434, 441 (1st Cir. 2006) (no public interest in establishing requester's innocence in prior criminal case or in supplementing discovery requests); *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000) (requester's purpose of establishing his innocence is not a "FOIA-cognizable public interest"); *Burge v. Eastburn,* 934 F.2d 577, 580 (5th Cir. 1991) (public interest in fair trials is not cognizable under FOIA); *Hawkins v. DEA*, 347 F. App'x 223, 225 (7th Cir. 2009) (holding that "a prisoner's interest in attacking his own conviction is not a public interest"); *Peltier v. FBI*, 563 F.3d 754, 764 (8th Cir. 2009) (general public interest in fair trials and even-handed administration of justice not cognizable under FOIA).

has produced evidence sufficient to satisfy this standard will there exist a counterweight on the

FOIA scale for the court to balance against the cognizable privacy interests in the requested

records." *Id.* at 174-75.  O'Brien has not provided any evidence of his innocence.  Therefore,

there is no "counterweight on the FOIA scale" and the privacy interests that the FBI seeks to

protect under Exemptions (b)(6) and (b)(7)(C) win out.

### D.  Exemption (b)(7)(A): Law Enforcement Proceedings

To apply Exemption (b)(7)(A), the Government must show that "(1) a law enforcement

proceeding is pending or prospective and (2) release of the information could reasonably be

expected to cause some articulable harm." *Manna v. DOJ*, 51 F.3d 1158, 1164 (3d Cir. 1995).

Seidel explained in his First Declaration that the FBI invoked Exemption (b)(7)(A) "in a limited

fashion to protect a single pending case file number," because "[t]he FBI determined release of

any of this material would provide criminals with information about the government's

investigation in ongoing matters and allow them to discover or tamper with witnesses and/or

destroy evidence."  The Government's First Vaughn Index shows that the FBI invoked this

exemption to redact one document and withhold four documents (entries 9, 327, 330, 332, and

334).  O'Brien speculated that the case file number at issue is his own criminal case, but the

Government responded that this assertion "does not reflect the nature of the information actually

withheld by the FBI."  As O'Brien has neither challenged the Government's invocation of this

exemption on other grounds, nor advanced evidence of bad faith, the Government has made a

sufficient showing as to this exemption.

### E.  Exemption (b)(7)(E): Law Enforcement Techniques and Procedures

Exemption (b)(7)(E) allows a federal agency to withhold or redact "records or

information compiled for law enforcement purposes" to the extent that their release "would

disclose techniques and procedures for law enforcement investigations or prosecutions."

5 U.S.C. § 552(b)(7)(E).  Seidel explained that the FBI invoked this exemption to protect (1) FBI

internal phone numbers and email addresses; (2) investigative techniques and procedures of its

informant program; (3) surveillance techniques and information on surveillance targets and

locations; and, (4) undercover operations techniques.

   Seidel explained the FBI's use of Exemption (b)(7)(E) in further detail in his Third

Declaration.  For example, he stated that "it is the FBI's policy to withhold CHS reporting forms

in full because of the harm it would do to the FBI's CHS Program."  Thus, the FBI withheld in

full page 180, because it was a standard FD-1023 CHS reporting form.  The FBI also invoked

this exemption to withhold "specific details related to the use of physical surveillance if the

disclosure of those details could reasonably be expected to risk circumvention of the law."  Thus,

the FBI withheld in full pages 183, 198, and 324 because they revealed the "who, what, when,

where, and how of the surveillance" and the rest of the information contained on those pages was

deemed non-segregable.[11]  Seidel further reasoned that although the public knows that the FBI

conducts surveillance, it does not know "the specific details or targeted information gathered."

And while the public knows that the FBI uses undercover employees, the agency wielded

Exemption (b)(7)(E) to shield from public view "the specific details of when they are used or the

manner they are used, the information gathered as a result of this technique, and the relative

utility of the type of information gathered," because of the "reasonably foreseeable harm to

undercover employees and the risk of providing information that would expose and disrupt

---

[11] Seidel's First Declaration also addressed the issue of segregability, explaining that, for those documents withheld in full, the FBI had determined that "any non-exempt information on these pages was so intertwined with exempt material, no information could be reasonably segregated for release.  Any further segregation of this intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content."

undercover operations."

O'Brien contends that the Government cannot invoke Exemption (b)(7)(E) to shield information that should have been produced to him in discovery in his criminal case.  As explained above, there is no public interest in re-enacting O'Brien's discovery battles.  *See Roth*, 642 F.3d at 1177 (citation omitted).  He also argues, without citation to any legal authorities, that "[t]he Federal statutes have a 'six year statute of limitations.'"  It is not clear what O'Brien means by this, but when an argument is "raised in passing . . . but not squarely argued," it is considered waived.  *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)); *see also* Eastern District of Pennsylvania Local Rule 7.1(c) (requiring that briefs contain a concise statement of the authorities relied on).

As O'Brien raises no other argument to challenge the Government's use of Exemption (b)(7)(E), he has not overcome the Government's well-reasoned explanations.

## III.   CONCLUSION

The Government has carried its burden in this FOIA case.  In three declarations and seventy-eight pages of detail, its witness described the FBI's information indexing systems, its records maintenance practices, and its search procedures.  Seidel explained the specific searches conducted in response to O'Brien's request, identified each of the five exemptions applied to the records sought by O'Brien, and broke each exemption down into more specific subcategories of information.  He explained what types of documents and information fell under each category and subcategory, why the agency considered those exemptions applicable, and the potential ramifications of disclosing the withheld information.  Because O'Brien has not introduced any record evidence that contradicts Seidel's declarations or that suggests bad faith, summary judgment is warranted.  *ACLU*, 628 F.3d at 619.  The Government's Motion for Summary

Judgment will be granted and O'Brien's Motion for Summary Judgment will be denied.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**